May I please the Court? My name is Nancy Tenney. I represent the petitioner here, Mr. Arthur Nelson. I would like to reserve five minutes for a rebuttal. Your Honors, Mr. Nelson presents a claim of ineffective assistance of counsel and the failings that he identifies resulted in the conviction of an innocent man. The first issue before this Court is whether Mr. Earle trial counsel's failure to investigate the medical evidence in this case was properly exhausted and is properly before this Court. As set forth in our brief, Mr. Nelson's claim of ineffectiveness to the state courts was very broad. It stated specifically that his trial counsel failed to investigate and failed to interview any of the witnesses that he suggested to Mr. Earle. But counsel, didn't he concede that the sexual assault occurred or the molestation occurred, the question was who did it? Didn't he concede that? He did state that in his appeal to the state courts. However, he also included evidence, evidence and statements that very much put that in question. He simply didn't have access to the medical records. His trial counsel, in fact, when offered the medical evidence prior to trial, told the prosecutor, oh, I don't need that. You can bring that, just bring that to the trial. Mr. Nelson never had access to the medical evidence himself to actually present that portion of the claim. And what he did do was speak to the child's treating physician and was told of the state physician's findings, and that treating physician said that what this what should happen here is that that girl should have an independent medical examination, what you're telling me. Procedurally, the court of appeals sent it back to the trial court for an evidentiary hearing, and findings were made. Those went back to the court of appeal. The court of appeal then made its findings. My concern is how do we give deference to the court of appeals' decision, as we're required to do so, but reach the result that you're asking us to reach? The Supreme Court decided the Rice case, which was a Ninth Circuit case, just a few days ago, discussing the same issue, that we must give more deference to the court of appeal. How do we get where you want us to go and still follow the law? Absolutely, Your Honor. In the Rice case, I would specifically note that the Supreme Court found and no one contested that the procedures within the State court had been fair and full. That's absolutely not the case here. First, with respect to the medical evidence, the remand from the court of appeals to the trial court was very limited. It did not include the medical evidence, although Mr. Earle's failure to contact Dr. Boss, the girls' treating physician, was mentioned at the hearing. The remand was specifically limited to the issue of whether there was any investigation as to other possible perpetrators. Moreover, as set forth in our brief, the remand hearing was a farce. The first attorney that the court appointed to represent Mr. Nelson was actually Thomas Earle, the attorney who he was claiming was ineffective. When the court realized that was a conflict, they instead appointed his subordinate, Mr. Romero, who, like Mr. Earle, has since been disbarred. And Mr. Earle was responsible for Mr. Romero's employment. Mr. Romero had a direct financial conflict in attempting to show that his superior provided an effective assistance of counsel. Moreover, not only was Mr. Romero very ill-prepared for the hearing, he didn't know the biological mother of the victim, he didn't know that the rules of evidence would apply at the hearing. He clearly was not prepared to present evidence at the hearing. But moreover, even the factual findings that did result from the hearing were clearly erroneous, were obviously not based on what was presented. In the Supreme Court's opinion, relying on the hearings from the record, first of all, the Supreme Court said that those findings were unchallenged, which certainly was not true. Second, that they said that there was no evidence presented that the alleged victim referred to any man other than Mr. Nelson as daddy during the time she was molested. Mr. Nelson testified to that. Mr. Nelson's mother testified to that. Well, there were other things. Sotomayor That's what concerned me. I wondered if the court was saying during the relevant time period there was no evidence that the child called someone else daddy. So was it that relevant time period that made the distinction, or was that just, again, incorrect, as you've indicated? It's simply an incorrect reading of the record. The girl was only 3 years old at the time. That's part of the reason she was unable to testify, was she was simply too young and unable to answer any questions in any rational manner. But so the time period, particularly given the allegations from the State, was not specific. And certainly that's a false distinction to say Mr. Nelson had raised the girl and had known the girl since she was born, as had his mother. And there were other very specific statements as to possible other perpetrators. Counsel, let me ask you this. Why wasn't the failure to investigate whether the claim was procedurally defaulted? Well, Your Honors, if you find that it was not properly presented to the State courts, we would agree that it's procedurally defaulted. And thus, the only way for this Court to reach the merits of that claim would be if there is a finding of miscarriage of justice, if Mr. Nelson can show that failure to review that claim would essentially result in the conviction of an innocent man. And it's a very difficult standard. It's a standard Mr. Nelson can reach. It's a standard Mr. Nelson, I submit, has already established based on the evidence. Actual innocence? Actual innocence. The State's case began and ended with that medical evidence. The girl had never made any allegations of abuse. There was a clear financial motive for her biological mother to bring those allegations. Once that girl was brought to the State's doctor, Dr. Dudick-Bross, and those false conclusions that she had been sexually abused were made, it set in motion a series of events that simply were never investigated and never challenged at trial. This is really different than most actual innocence claims because it's not saying I didn't do it. It's saying there wasn't a crime in the first place, which by definition means you'd be innocent. Actually, what Mr. Nelson says is both. I think it's set forth very well by the medical evidence. I'm speaking now of the medical evidence. The reason the medical evidence becomes critical to the miscarriage of justice argument, and potentially that door opens to the medical evidence, is that if the medical evidence offered up subsequently on behalf of your client is accepted, then there's not a crime. And hence, your client has to be guilty. So I mean, it has to be innocent, rather. And so this puts it in an unusual posture. Most cases of actual innocence, somebody is still trying to pin it on somebody else. In this case, your client is insisting upon if it was done, it wasn't me, but the medical evidence points not to it was somebody else, points to there was no crime in the first place. That it simply never occurred. Which is a little different than the position he took previously, which said somebody did it, but it wasn't me. I'm not challenging the fact that she was molested, but I'm saying it wasn't me. I would say, too, what his letters that he wrote to Mr. Earle, and Mr. Earle refused to meet with him prior to trial, he wrote him a series of letters that we have included in the record saying, I want to meet with you, I want to tell you witnesses who can tell who other possible perpetrators might be. He was also saying, please get an independent evaluation. Please look at this. The girls' treating physician says your findings, your medical conclusions don't indicate. But I'm talking about his filings in court, his pro se habeas petition. He didn't make that argument. He didn't make it directly in the text of his brief, but he did include the Ross report, the investigator who was hired by the family after the trial, but prior to the sentencing, includes the investigator's discussions with Dr. Boss, who said that's an outdated methodology that the State's doctor is relying on. The measurements that she's using to conclude that this child has been abused simply don't indicate abuse. But the jury could have, nevertheless, said there was abuse. Even if the doctor said it's outdated, the jury still could have elected to believe there was abuse. There certainly was other evidence that the State presented to, in furtherance of its case, it presented a number of hearsay statements that the child had made after due to Ross's findings. The girl was taken to the hospital. She was taken and placed in a series of foster homes. The foster parents were told to write down anything that seemed unusual or might suggest abuse. She was sent to a mental health counselor and, again, trying to elicit statements. None of that hearsay would now be admitted in light of United States v. Crawford. But at the time, under the law, those statements were admitted. Also, the State presented some behavioral evidence that they suggested indicated that she had been sexually abused. We cite to a number of studies that show that Mr. Earle should have had a behavioral expert to combat the State's testimony because all of the things that they are citing to are more indicative of either developmental delay or simply environmental instability, temper tantrums, sleeplessness, nightmares. Obviously, this young girl, 3 years old, goes, is taken to a doctor's appointment and never allowed to see her father again, has already been taken away from her biological mother. It's not surprising she'd have some instability, perhaps some nightmares and sleeplessness. All of that evidence could have been explained, but it was presented and uncontradicted by the defense because Mr. Earle simply wasn't prepared to challenge the State's descriptions of what this behavioral evidence meant. If the Court has any question as to whether we can show the miscarriage of justice standard, we would ask the Court to remand for an evidentiary hearing on that issue, as I believe the documentary evidence that we have submitted does meet that standard. But I'm still trying to figure out what the Supreme Court says is left of the miscarriage of justice door, but let me ask you to focus on something else now. From the district court, particularly the magistrate judge's report and recommendations, seemed heavily influenced by Petitioner's own statements to the effect that somebody else couldn't have done it because he had such control or such custody or took such care of the child. And as I understood the district court's determination, they didn't find ineffective assistance of counsel with regard to the failure to pursue other perpetrators, but concluded it wasn't prejudicial because in light of the defendant's own insistence that he had such care and custody of the child, it couldn't have been anybody else. He sort of painted himself into a corner. What's wrong with that determination? Well, in one respect, it shows the importance of challenging the medical evidence, because given the circumstances, given Mr. Nelson's very frank admissions that he kept very close tabs on this child, it put the medical evidence just that much more in the forefront that if Mr. Earle, his trial counsel, was going to pursue a defense that someone else did it, he had to explain how chronic abuse could have occurred. But moreover, the trial of the magistrate judge relied very much on the behavioral evidence and so forth that was never challenged. Mr. Nelson had and his family members had a number of individuals who were given close contact with this girl privately. It was not only the biological mother who at various times the alleged victim did allege abused her, also a series of boyfriends. And some of those boyfriends did have contact over a period of time, access to the girl, and it should have been argued that there was sufficient time for those individuals to be responsible. There were at least two of them who were specifically named by the young child at various points as having been responsible. But again, I say it just highlights all the more that Mr. Earle, if he was going to pursue a defense only that someone else did it, needed to investigate that medical evidence given Mr. Nelson's statements to the CPS workers and the other State investigators. So we keep going back to the medical evidence. Let me inquire as to the question I alluded to. I think the Supreme Court had an argument last week or the week before that in House v. Bell that may lead to some more insight. But what is your sense as to what's left of the miscarriage of justice? I've called it a door argument at this point. Well, Schlupp v. Dello, the stance that's forth the standard that in order to establish that a miscarriage of justice has occurred, a Petitioner needs to establish that a reasonable juror considering the evidence, it's more likely than not that a reasonable juror considering the evidence would not vote to convict the Petitioner. And I think in this case certainly the new evidence would include the medical evidence. It would also include all of the witnesses that Mr. Nelson identified. It would include behavioral experts to explain the young child's behavior and why it doesn't indicate sexual abuse. Given all of that evidence, no reasonable juror would vote to convict Mr. Nelson, would make a finding beyond a reasonable doubt that he committed this crime or even that the crime necessarily occurred. Well, can you satisfy the requirement when you talked about we think there's life to that argument, we should remand it for an evidentiary hearing, but Aptis says we can't have an evidentiary hearing unless the applicant shows there's a series of things, none of which seem to fit the situation very well, the establishment of new rule of constitutional law, a factual predicate that could not have been discovered through the exercise of due diligence. How is it we can get by Aptis' limitation on holding an evidentiary hearing? Your Honor, first of all, to hold an evidentiary hearing on the question of miscarriage of justice is different than holding an evidentiary hearing on his claim, his ineffectiveness claim as a whole, because it's an uniquely Federal question. It's true, although it's the medical evidence I'm really focused on. How do you get the medical evidence to us without an evidentiary hearing? Well, an evidentiary hearing on the question of whether he's met the miscarriage of justice standard does not need to meet the same requirements because it's a uniquely Federal question. It's a question that's only been presented to this Court. It's not something that he would have been attempting to show in the State courts. Moreover, to the extent there has been State court factual development, for the reasons I stated previously, the hearing was a farce. The remand hearing where he was given an attorney to speak for him who had a direct financial conflict and who was completely unprepared to represent or speak for Mr. Nelson prevented him from developing a factual record previously. Counsel, you're down to two minutes and 36 seconds. Do you want to save that for rebuttal? I will save that for rebuttal. Thank you. May it please the Court. My name is Greg Rosen. I'm an assistant attorney general, and I represent the Respondent Maggie Miller Stout in this matter. Because Mr. Nelson cannot demonstrate that he was prejudiced by Mr. Earle's failure to investigate or interview witnesses in his case, given the strength of the State's case against him, he cannot demonstrate that Mr. Earle was constitutionally ineffective. Now, the Court had asked Ms. Tenney several questions as to how Mr. Nelson has properly exhausted his medical evidence claim. And the response is he has not, because Mr. Nelson, it — You just told us the evidence was so overwhelming, and now you're giving us a procedural defense. Well — That's not impossible, but it kind of drains my faith in the sense that the evidence is so overwhelming here, there's not a prejudicial problem. Well, Your Honor, the evidence was so overwhelming in this particular case in part because of the admissions made by Mr. Nelson himself to Chief Blackburn and to Bruce Thomas, the CPS investigator. He stated to those folks that he could understand how this child possibly could have been molested because he supervised her so closely. So just based upon that admission alone, he's hemmed himself in pretty well. Only if there was a crime in the first place. That's correct, Your Honor. But corroborating that testimony was — and Ms. Tenney sort of understated this, and I would urge this Court to review the trial court record, but there was numerous testimony from the CPS worker, from the foster parent, and the Court can find this testimony, ER 458-472, 404-446. Counsel, do you agree with opposing counsel that under Crawford that testimony would now be inadmissible? Yes, I do, Your Honor. I think if the case was — if this Court granted the writ and remanded it for a new trial back in the superior court, much of this testimony, if not all of it, since it was testimonial under Crawford, would not be admissible at this juncture. Yes. Your Honor, the — there is no prejudice because the overwhelming nature of the State's case makes prejudice impossible for Mr. Nelson to establish. The witnesses testified, the foster parent, the daycare provider, the preschool teacher, the child therapist. I would urge this Court to review the testimony. They testified what? I can go one by one, Your Honor. Mr. Thomas, again, the CPS investigator, testified as to the admission that I just indicated to Judge Clifton. Right. Chief Blackburn testified to the same admission. Right. Not the admission that he had molested her, but just that he doesn't see how this could happen because he supervised her so closely. Exactly. Okay. Now, what else was there? Yvonne Cardwell was the foster parent, and I would especially urge this Court to review her testimony at ER 404-446. Ms. Cardwell testified to numerous acting out behaviors by the victim. She testified to the victim's specifically trying to put her finger in her rectum, stating, my daddy plays with my pee-pee, as she was seen playing with her own genitals. Ms. Cardwell testified that the victim was sitting on her lap and spontaneously began humping her while stating, quote, daddy humps me when I sit like this, end quote. Irene Healy, the daycare provider, testified that the victim would come up to her when there weren't any kids around and say, quote, my daddy hurt me, end quote, quote, touching me there, end quote, her vagina. And testified she observed the victim touch two boys' penises and that she saw the victim touch herself and that it felt good and that her daddy did that to her or would touch her there. Marie Phelps, who was the preschool teacher, and this can be found at ER 481-86, testified that the victim stated on several occasions that her daddy stuck rocks in her pee-pee. The testimony of Deborah Holt, who was the child care therapist at ER 446-458, testified that the victim removed the clothing off the doll, pointed to the doll's abdomen and said, there, that's where my daddy's rocks are. She also testified that the victim made a statement to her, quote, out of nowhere, close quote, that, quote, my daddy puts rocks in my pee-pee, end quote. Now, in Mr. Nelson's brief, he attempts to explain away all of this powerful inculpatory evidence, but I would respectfully submit he can't and does not. There is too much inculpating Mr. Nelson for having committed these acts. And I would, again, urge the court to review the trial court record for the weight of, again, what I would characterize as overwhelming evidence, which demonstrates that Mr. Nelson is anything but an innocent man. Counsel, the difficulty is that, at least from Mr. Nelson's viewpoint, he was not the only person who the child called daddy, and that was part of the ineffectiveness of his attorney, is that he had presented evidence to him that the attorney failed to investigate regarding other men who the victim called daddy. What's your response to that? Well, the testimony of Marie Phelps and the testimony of Yvonne Cardwell, the foster parent and the preschool teacher, made clear that although there were other references to other folks that the child referred to as daddy, most of those references were to Mr. Nelson. How did they know? How did they know the references were to Mr. Nelson? Well, they said as to daddy. But how would – I don't understand. What in the evidence says that when she referred to daddy, she was referring exclusively to Mr. Nelson? That's based upon Patricia Nelson's testimony at the trial. The biological mother? Correct. Well, there were problems with her, too. Well, Ms. Tenney – Mr. Nelson certainly believes that her testimony is questionable based upon certain mental health history. Do you agree with counsel that the findings of fact made by the trial court when the case was sent back by the court of appeal are in error? Well, as this Court is aware, those findings of fact are entitled to a presumption of correctness unless they're rebutted by clear and convincing evidence. We can debate whether the Superior Court erred in making certain findings, but what we can't debate is that the U.S. District Court, in denying Mr. Nelson's habeas petition, reviewed the entirety of the Federal Court record, which was developed by Ms. Tenney. And Judge Van Sickle specifically stated in his order granting my motion for reconsideration and dismissing Mr. Nelson's habeas petition that Magistrate Judge Imbrogno gave the Superior Court findings little credence and made her determination based on an independent review of the entire record as put together by Ms. Tenney. This is a difficult case for everyone involved, it appears, because Judge Van Sickle flipped in terms of how he resolved it. This is a very troubling case. Well, Judge Van Sickle ultimately came down, and I believe this can be found, again, in the same order granting the reconsideration, Your Honor. But was that more of a legal argument that was presented to him? Because it did appear at one point he also thought that the record needed to be further developed. The argument was made, and he accepted that argument, that as a matter of law he couldn't do what he had in mind, he said. That's true, Your Honor. But he also concluded ultimately that the record was sufficiently well developed for the Court to render a decision on the habeas petition. And he ultimately concluded, despite the fact, as you said, he dealt with issues of law, Judge Van Sickle came down in this way at the end of his order. He said, the victim lived with Mr. Nelson. Mr. Nelson strictly limited other persons' access to her. The victim was sexually assaulted. The victim said she'd been sexually assaulted by Daddy, and she referred to Mr. Nelson as Daddy. And ultimately, despite the issues you raised, Your Honor, that's where Judge Van Sickle came down. Do you agree that there is ineffective assistance of counsel? No, I do not, Your Honor. Why not? Well, Strickland teaches us that, obviously, it's a two-prong test. One, you've got to show that deficiency, and based on that alleged deficiency, you have to demonstrate prejudice. Mr. Nelson has to carry it. First prong, do you not agree that the first prong has been met? Well, Strickland teaches us that we don't have to consider the first prong. We can just consider the second prong. If we were considering the first prong, would you agree that the representation was ineffective? If I was considering the first prong, Your Honor? If we are considering the first prong, would you concede that the representation was ineffective? I would concede that Mr. Earle did not perform particularly well in his pretrial investigation of this case. Would you agree that his performance fell below the standard that a reasonably competent attorney would adhere to? As to some respects, yes. I would concede that. But that's not where this case turns. I understand. I'm just trying to get your assistance in helping us to frame the issue for us to resolve. I understand. What I'm arguing is prejudice. Right. I'm arguing that in light of the strength of the State's case, Mr. Nelson doesn't make the prejudice standard. Now, there's been some discussion earlier on while Ms. Tenney was giving her argument as to an evidentiary hearing. I would respectfully request and submit that Mr. Nelson is not entitled to such an evidentiary hearing. Ms. Tenney previously requested that the U.S. District Court to expand the record in this particular Federal habeas petition. That request was granted in part by the U.S. District Court. And a great deal of evidence was submitted to the U.S. District Court based upon Ms. Tenney's request to expand the record. So to have an evidentiary hearing would serve no purpose. The information that Mr. Nelson would wish to admit during an evidentiary hearing is already before the Federal court and was before the Federal court when Judge VanSickle made his ultimate determination in this particular case. So in that sense, an evidentiary hearing at this point would serve no purpose. If anything, the evidence that Mr. Nelson would put forth in that evidentiary hearing, which, again, I would submit would be mostly duplicative of what's already before the Federal court, would probably get weaker, since I would be able to cross-examine each of those witnesses. And right now, I can't. It was simply before the court. Sotomayor, if there was an evidentiary hearing at the district court level and the findings were inconsistent with those findings previously made by the trial judge in State court and adopted by the court of appeal, what would we do with the findings that have now been made by the district court? How would we use them? Is there a way that we could come to a different conclusion if that were warranted and still do deference to the body of law that we must give deference to the court proceedings? Well, I think if there's a separate Federal court evidentiary hearing, the court would have to take into account all the evidence that came into that hearing. Even if the findings were different than the findings made by the trial court adopted by the court of appeal? Well, I think the court would have to consider the totality of the record. If I may be excused one moment, Your Honor. Does the decision in the Rice case decided by the Supreme Court last week, does that give further support to any of the arguments that you're making, or we don't need to actually consider that case? What's your position? My honest answer is that I have not read that case at this juncture, so I can't intelligently respond to the court's question, I'm sorry. Let me pose to you this, not so much question as argument or challenge. As I understand Judge Van Sickle's determination, he closed the door to the medical evidence issue or to the was there a crime committed issue because of the concessions or the positions taken by Mr. Nelson in his filings with the State court. So the problem with that is that Mr. Nelson's conceded the fact of a crime having been committed. Actually, Your Honor, he conceded it twice. I beg your pardon? He conceded that twice in the State court record. I didn't mean to interrupt the court. The court looks at SCR 65 and SCR 155-56, which is his reply brief to the State's brief, which asked the Court of Appeals to reconsider its decision setting the reference hearing. He conceded it again. And actually, I have ---- Well, I accept his faith, because my concern is a little bit different than that. The district court did not do what you urged us to do a few minutes ago in going through all of the evidence that, in fact, that there was a crime committed, the testimony of the foster parents and so forth. It doesn't look like the district court weighed that, because it concluded that the concession or the default on that issue was sufficient to close the door to that question. And so the district court, Judge Van Sickle as well as the magistrate judge, put themselves back to the question of, okay, there was a crime committed. Who is the perpetrator? You got a defendant who's busy saying, I've got such control over this child, it doesn't make much difference. So the additional evidence isn't going to make much difference. Well, if we ---- in essence, what I'm raising with you is the district court doesn't seem to have made the determination that you're suggesting that we make in terms of weighing the evidence on the was there a crime question. Is that an issue that's appropriate for an evidentiary hearing if we conclude the issue has not been procedurally defaulted? Well, I guess I would respectfully disagree with the court that Judge Van Sickle and even Magistrate Judge Ambronio did not consider that evidence. I didn't read their orders. Well, I look at ---- I'm reading Judge Van Sickle, for example, the problem with this contention is that Mr. Nelson ratified his trial attorney's concession in the briefs he submitted to the Washington appellate courts. And I read this. I don't see any discussion of the foster parent testimony or the other testimony you've referred to in terms of reasons to believe that, in fact, the child had been abused. But Judge Van Sickle also made clear, Your Honor, that Magistrate Judge Ambronio considered the ---- conducted an independent review of the entire record as developed by Ms. Tenney during the pendency of the Federal habeas proceeding. Well, frankly, I didn't see a lot of discussion of that in her report and recommendation either. I find her conclusion is focused once again on was this defendant the guilty party as opposed to was there a crime committed in the first place. And my recollection or impression is that that's because, again, of the concessions made by Mr. Nelson and his filings with the State court. Your Honor, two of the pieces of the many pieces of evidence that Ms. Tenney brought before the U.S. District Court in her advocacy of Mr. Nelson during the pendency of the Federal habeas petition were the two ---- were the letters from the two doctors from July of 2002. One was Dr. Adams and one was Dr. Boss. Both of those doctors opined as to their views as to Dr. Dudick-Bross's examination and, in their view, the lack of quality and the flawed nature of that evaluation of the victim's anatomy during the course of their examination. Where was that discussed by either the magistrate judge or the district court judge? At ER 1214, my recollection is that Judge VanSickle stated that Magistrate Judge Imbrugno gave the superior court findings little credence and conducted an independent review of the record based on the information supplied. But my question ---- That's not my question. My question is specifically where in the record were those submissions from the doctors discussed? Specifically? I can't give the Court an exact ER or SCR reference at this moment, Your Honor. But ---- It actually was discussed in the magistrate judge's report. It's at ER 1017 and plus or minus. But the magistrate judge makes a point of saying the only question for the jury was whether Petitioner was the perpetrator. But we reached the conclusion that there was persuasive evidence that that was the case and the additional evidence which Petitioner is trying to offer up isn't going to change that conclusion. And then goes to make reference to the medical evidence. So it's discussed, but I don't see a conclusion that says that wouldn't have been persuasive either. And the reason I'm harping on this, it seems to me that really goes back to the miscarriage of justice. If there wasn't abuse in the first place, then the defendant is necessarily innocent. And that's obviously a subject Mr. Earle did not pursue at trial. He accepted as a given, okay, this medical report from the doctor, the examination looks compelling. Although the sense is I got that he told the prosecutor he didn't have to make it available any earlier. He'd take a look at it at trial. That's not a road Mr. Earle was going to go down. And maybe he had such faith in doctors, it just never crossed his mind that maybe the doctor was wrong. And yet if there's evidence that could have been offered that maybe the doctor is wrong, then everything seems to change after that. And indeed, even Mr. Nelson's attitude may be different. I sit and wonder why does he make the concessions he makes to the state courts, which he clearly does. And yet attach to the investigator's report, which raises this question, and I have to conclude it's because he thought there had been abuse, which suggests either he knew there was abuse because he was involved in it, or he just never understood that issue. Because like Mr. Earle, he just took it as a given. There must have been abuse because the doctor said so and didn't contemplate that the whole thing was off track someplace. Now, I'm left very troubled by this case on both sides. And I'm not giving you so much a question as an expression of what my concern is, so that if there's something in particular you want to point me to, you can. Well, the Court opened up with a question very early in Ms. Tenney's argument as to that precise issue. And Ms. Tenney's response, as I recall it, was that the reason that Mr. Nelson twice conceded abuse of the victim, and there's no doubt about that, was because he didn't have the medical records available to him at that time. But one of the documents that he appended to his personal restraint petition was, as I recollect, was a reference within the Ross report in which this investigator Ross spoke with Dr. Boss, who opined various things as to the lack of quality of the State's medical experts' conclusions. So he had that evidence before him as to maybe this kid was never abused at all. And if he had it, why did he concede twice that the child was in fact molested? And he did concede it twice. His statement in his brief in support of his personal restraint petition said, quote, and I have it right in front of me, and this is on SCR 65, this was not a case of denial that the child was molested, but the question was by whom? Who was the perpetrator in this case? End quote. He had the evidence before him. And I understand my time is up, but if I may go on just for one more minute. Please wrap up. I will, Your Honor. Mr. Nelson does not demonstrate that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence. Even if the – this Court considers all of the evidence that he has put before the U.S. District Court, that's a tough standard to meet for a fundamental miscarriage of justice, that no reasonable juror would have convicted him in light of the new evidence. The Court should consider the new evidence, but also consider the testimony of all the other witnesses as well as Mr. Nelson's admission, which is highly inculpatory. In conclusion, I would ask this Court to affirm the decision of the U.S. District Court and dismiss Mr. Nelson's habeas petition with prejudice. Thank you, counsel. Thank you, Your Honor. Rebuttal. I would first like to address the topic of Mr. Nelson's concessions in his pro se briefs to the State courts. I would ask the Court to keep in mind that he's a very uneducated man. He was proceeding on his own without the assistance of counsel, had really never been given any assistance from counsel. And he was someone who had never before had any trouble whatsoever with the law. He's completely unfamiliar with the court systems and so forth. All Mr. Nelson knew is that he didn't molest this little girl. The State, second, the State has asked the Court to look at the trial record, and I, too, welcome the Court to look at the trial record and what happened here. The – I think the reason the State wants Your Honors to look at the testimony that was presented is because none of it was contested at trial. None of the witnesses – well, there was some cross-examination, some little cross-examination. Many of the witnesses, there were no questions asked at all on cross-examination. And so what the State wants you to look at is what Mr. Earle did. Mr. Earle's defense, which was no defense, in talking about, again, the behavioral testimony in terms of the girl acting out and some of the sexually precocious statements and actions that she took, again, are brief cites to report showing that that behavior does not indicate sexual abuse. It's more indicative of a child being developmentally delayed or having environmental instability, which obviously this young girl had. In terms of some of the statements that she made, the reason that Crawford v. Washington is so important, the reason the Confrontation Clause is so important is this girl made statements that on their face, many of them did not make any sense. Putting rocks in your pee-pee, the girl's mental health counselor spent a great deal of time trying to elicit from her, what does this statement mean? Until finally out of frustration, she puts an anatomically correct doll in front of the girl and says, show me daddy's rocks. The girl hasn't stated that's where the rocks would be or that they're daddy's rocks or anything of that nature. Those statements were never investigated. They were never explained because the child never testified and there was no investigation done. The State has indicated that an evidentiary hearing in this case would serve no purpose. And I respectfully disagree. There was some expansion of the record and some limited discovery granted, in part because Mr. Earle had discarded his file. Thus, when I was appointed on the case, I had no documents to work from. And therefore, the court did allow some limited discovery and did allow us to submit the medical reports. However, as the State themselves indicated, they want to cross-examine some of our witnesses. Well, we want to cross-examine the State's witnesses. I think it's impossible to say that there could not be further development of this record and that it would not assist in seeking the truth in this matter to have an evidentiary hearing. All right. Counsel, thank you. Thank you. Thank you to both counsel for a well-argued case. This case is very difficult. And we thank you for your assistance. The case just argued is submitted for decision.
judges: Rawlinson, Clifton, Marshall